IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. BILLY CLAY BROWNING

**Appeal from the Circuit Court for Henry County**
**No. 13359     Donald E. Parish, Judge**

---

**No. W2007-00784-CCA-R3-CD  - Filed July 3, 2008**

---

The Appellant, Billy Clay Browning, was convicted by a Henry County jury of one count of first degree premeditated murder and received, as provided by law, a sentence of life imprisonment. On appeal, Browning has presented two issues for our review: (1) whether the trial court abused its discretion in refusing to grant a continuance because Browning was unable to assist trial counsel with his defense; and (2) whether the evidence is sufficient to support the conviction. Following review of the record, we find no error and affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, SR.J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JJ., joined.

W. Jeffery Fagan, Assistant District Public Defender, Camden, Tennessee; and Anthony L. Clark, Paris, Tennessee, for the Appellant, Billy Clay Browning.
Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; and Robert "Gus" Radford, District Attorney General Pro Tempore, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

This case involves the tragic shooting death of the victim, Kerry Browning, by his nephew, the Appellant Billy Clay Browning. On February 26, 2002, the Appellant fired five shots at the victim with a .22 caliber pistol, striking him in the head, neck, and upper left chest. The victim, a commercial pilot for U.S. Airways, died two days later in a Memphis hospital. The homicide occurred at the residence of Mary Morris, which was located at 906 Riggins Street in Paris.

On the day of the shooting, the victim had visited his uncle, John Browning.[1] Browning, who had only one leg and was confined to a wheelchair, resided at an apartment in Paris, which was near the residence of Mary Morris. Browning testified that if he looked out his back door, he could see the back door of the Morris residence. Browning was acquainted with Ms. Morris because she was his caregiver. On this date, the Appellant was living with Mary Morris and her two children at the Riggins street address.

Prior to her relationship with the Appellant, Ms. Morris had been involved in an intimate relationship with the victim. This relationship had ended harmoniously, however, and, approximately two to three months later, Ms. Morris entered into a relationship with the Appellant. Indeed, after this relationship formed, it was the victim who suggested that the Appellant should "move-in" with Ms. Morris. Nonetheless, Morris testified that the Appellant was jealous of the victim, and he forbade her from talking to or being around the victim when the victim returned to the area for visits.

During the victim's visit to John Browning's home on the afternoon of February 26, they were ultimately joined by the Appellant. The Appellant appeared upset and stated that Mary Morris told him that the victim and three others had raped her. Browning and the victim assured the Appellant that this had never happened. To resolve the accusation, the victim suggested that he and the Appellant go to Ms. Morris' residence to learn the truth. The victim then departed to the Morris residence, with the Appellant following shortly thereafter.

According to Morris, the victim arrived at her apartment as her mother was bringing her two children home from daycare. She and the victim, along with the two children, entered the residence, and the victim hugged and kissed the children before informing Morris' daughter, Savannah, to take her brother into the bedroom. The Appellant then entered the home and, without speaking, proceeded to the bedroom area of the home. When he returned to the living room where Morris and the victim were, his hands were behind his back. The Appellant began shouting and accusing the victim of raping Morris and hurting her children. The Appellant asked Morris if she remembered the incident, but Morris denied that the incident had ever occurred and told the Appellant that it was all in his mind. Morris decided it would be best to tell the victim to leave in order to allow the Appellant time to calm down. Before she could do so, however, she heard a click, which she initially thought was the Appellant opening his knife. However, immediately thereafter, she heard the sound of a gunshot and saw the victim, who had started to leave, fall to the floor. After hearing the first shot, Morris grabbed her children and removed them to the safety of their bedroom. At this point, the Appellant shot the victim twice more.

After retrieving her children from the bedroom, Morris entered the kitchen and saw the victim lying on the kitchen floor in a pool of blood. The Appellant was kicking the victim and threatening to shoot him again if he moved. Morris pleaded with the Appellant to stop. At this

---

[1]The Appellant was the adopted brother of John Browning. John Browning and the victim's father were brothers.

point, Morris fled the apartment with her children, retreating to a nearby neighbor's apartment. The Appellant also left the home and returned to John Browning's residence. Browning was on the telephone when the Appellant entered, and the Appellant told him to get off the phone so that he could call 911. The Appellant then informed his brother that he had shot the victim, who was lying in the field between the two apartments. Browning left his apartment in his wheelchair and made his way to the victim, who was still alive and asking for a priest. After calling 911, the Appellant approached Browning and the victim in the field and told Browning to tell the authorities that the victim had attacked the Appellant first. Browning told the Appellant that he would not lie for him, and the Appellant, still holding the pistol, informed Browning that if he had more shells, he would shoot him as well. The Appellant then returned to Morris' residence.

When Morris returned to the residence, she asked the Appellant why he had shot the victim. He informed her that he had done it for her. The Appellant then instructed her to tell the police that he and the victim had gotten into a fight, that the victim had initially shot at the Appellant, and that the victim was shot during a struggle for the gun. He explained to Morris that if she informed the police of these facts, it would be self-defense and he would be out of jail in a few hours. When the authorities arrived, Morris did in fact give them a statement to this effect. However, she later recanted and informed police that she had only given the statement because of her fear of the Appellant.

On July 2, 2002, the Appellant was indicted by a Henry County grand jury for one count of first degree premeditated murder. After competency testing, the Appellant was found incapable of assisting in his defense and hospitalized for treatment. Subsequently, he was re-evaluated and found competent. One day prior to the commencement of trial, defense counsel moved for a continuance arguing that the Appellant was still unable to assist in his defense. The trial court denied the motion, and the trial began as scheduled. On January 27, 2007, the Appellant was found guilty as charged and sentenced to life in prison. Following the denial of his motion for new trial, the Appellant filed a timely notice of appeal.

**Analysis**

On appeal, the Appellant argues that the trial court erred in denying defense counsel's motion to continue based up the Appellant's inability to assist counsel with his defense. The granting of a continuance rests within the sound discretion of the trial court. *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004). We will reverse the denial of a continuance only if the trial court abused its discretion and the defendant was prejudiced by the denial. *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995). In order to show prejudice, the defendant must demonstrate that a different result might reasonably have been reached if the trial court had granted the continuance or that the denial of the continuance denied the defendant a fair trial. *Id*. Moreover, a defendant who asserts that the denial of a continuance constitutes a denial of due process or the right to counsel must establish actual prejudice. *Odom*, 137 S.W.3d at 589.

Following an initial evaluation, the Appellant was committed to Western Mental Health Institute on December 23, 2002, and remained there until June 27, 2005, at which time it was determined that he was sufficiently able to aid defense counsel in defending himself at trial.[2] However, the Appellant was again committed to Western Mental Health Institute on April 11, 2006, and discharged on May 8, 2006. On January 24, 2007, the day before trial was scheduled to begin, defense counsel filed another motion to continue, asserting the need that an additional mental evaluation be conducted. In the motion, counsel asserted that the Appellant was unable to communicate with counsel effectively. The State opposed any continuance, arguing that the Appellant had only recently been evaluated and found capable. The trial court, in denying the motion, specifically found as follows:

> The Court notes that on January 4th, 2007, that the Court heard an oral motion to continue, which as stated this morning, is essentially on the same grounds as the written motion.

> At that time, the Court engaged the [Appellant] in a dialogue in which the [Appellant] demonstrated an understanding of the nature of these proceedings.

> On January 22nd, just a few days ago, the [Appellant] was again in open court to request that one, or both, of his lawyers be removed.

> The Court, again, engaged the [Appellant] . . . in conversation, which [the Appellant] certainly understood; although, he disagreed with the Court's eventual ruling.

> The Court further notes that there has been no notice on insanity defense filed in this matter. No suggestion that the [Appellant] had a mental disease or defect which affected his ability to maintain the culpable mental state required. Moreover, the [Appellant] has repeatedly, when evaluated for competence to stand trial by Dr. Richard Drury, Dr. Drury has, in the last six months, issued three reports, dated December 29, 2006; September 8, 2006; and June 19, 2006, all of which conclude that the [Appellant] is aware of and understands the nature of these proceedings and can advise counsel to this participant. These reports are in the Court file.

> The Court concludes and the records show that [the Appellant] has the ability to meaningfully cooperate with his counsel, although he may not, in fact, do so at a trial.

---

[2]The initial evaluation concluded that although the defense of insanity could not be supported, the Appellant poses a likelihood of serious harm to others based upon the presence of "paranoid delusions and long history of violent confrontations."

On appeal, the Appellant contends that the circumstances of the Appellant's prior commitments in conjunction with counsel's affidavits in support of the motion demonstrates a finding that the trial court abused its discretion in denying the motion to continue. We disagree. Clearly, the court considered the relevant circumstances in its ruling. The court personally engaged the Appellant in two separate dialogues prior its ruling and concluded that the Appellant understood the proceedings. Moreover, the court considered the findings of recent mental evaluations which opined that the Appellant was able to advise counsel and assist in his defense. As such, we must conclude that no abuse of discretion is established on the record.

## I. Sufficiency of the Evidence

Next, the Appellant contends that the evidence is insufficient to support his conviction for premeditated first degree murder. In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First degree murder, as relevant here, is defined as "[a] premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1) (2006). Premeditation means that the defendant acted with a "previously formed design or intent to kill." *State v. West*, 844 S.W.2d 144, 147 (Tenn. 1992). The element of premeditation is a question of fact to be resolved by the jury and may be established by proof of circumstances surrounding the killing. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). Although there is no strict standard governing what constitutes proof of premeditation, our supreme court has previously identified certain circumstances which will support a finding of premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of a killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed;

(6) destruction or secretion of evidence of the killing; and (7) the defendant's calmness after a killing. *State v. Leach*, 148 S.W.3d 42, 53-54 (Tenn. 2004) (citing *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1987)).

On appeal, the Appellant argues that "the inconsistencies in the State's case" preclude a rational juror from finding that the Appellant was guilty beyond a reasonable doubt. Specifically, the Appellant references the following: (1) that all witnesses testified that no prior problems existed between the Appellant and the victim; (2) conflicts in the testimony regarding whether the victim exited John Browning's house with a glass of whiskey or left it at Browning's; (3) Morris' conflicting statements given to police; (4) that the physical evidence, including medical testimony, supported a conclusion that a fight or altercation occurred prior to the shooting; (5) the victim's failure to inform someone that the Appellant shot him without provocation despite the fact that he was coherent and conversing following the shooting; and (6) that it was the Appellant who contacted 911. The Appellant argues that these inconsistencies are fatal to a finding of guilt. This argument is misplaced. The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible or noncredible proof, as these issues are resolved solely by the jury. Rather we look to the record to determine whether there was substantive probative evidence to support the verdict. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not this court. *Pappas*, 754 S.W.2d at 623.

When examined in the light most favorable to the State, the evidence presented at trial was more than sufficient to justify the jury's verdict in this case. It is uncontraverted that the Appellant fatally shot the victim. Ms. Morris was an eyewitness to the shooting; the Appellant admitted to John Browning that he shot the victim, and the victim informed police that he was shot by the Appellant. The proof at trial established that jealousy was the motive for the murder. The Appellant stole the murder weapon several weeks prior to the homicide, and on February 26, without warning, shot the unarmed victim. After the victim fell to the floor, the Appellant continued the assault by kicking the victim. The Appellant then placed the pistol next to the victim's head and threatened to shoot the victim again if he moved. In an attempt to conceal the truth, the Appellant asked both Ms. Morris and John Browning to lie to the police with regard to how the murder occurred. These circumstances, which occurred both prior to and after the murder, demonstrate a "previously formed design or intent to kill" and were sufficient for a rational juror to conclude that the homicide was premeditated.

## CONCLUSION

Based upon the foregoing, the Appellant's conviction for first degree murder is affirmed.

_____
DAVID G. HAYES, SENIOR JUDGE